UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NOEL DALEY and ADAM VICTOR & SONS)
STABLE, LLC,                      )
                                  )
          Plaintiffs,             )
                                  )
     vs.                          )     1:06-cv-1493-JDT-WTL
                                  )
JOE GORAJEC, both in his individual )
capacity and in his official capacity as )
EXECUTIVE DIRECTOR OF THE INDIANA)
HORSE RACING COMMISSION, SARAH   )
MCNAUGHT, ALAN J. ARMSTRONG, JIM )
LAUCK, DOUG GRIMES and WILL KOCH,)
both in their individual capacities and in )
their official capacities as MEMBERS OF )
THE INDIANA HORSE RACING         )
COMMISSION,                       )
                                  )
          Defendants.             )

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 18)
AND PLAINTIFFS' RULE 56(f) MOTION (Doc. No. 25)**[1]

This matter comes before the court on Defendants' Motion for Summary

Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The motion was

filed on December 5, 2006, before an answer was filed by Defendants and before any

discovery had commenced.  On December 21, 2006, Plaintiffs responded to the motion

as if it were one for failure to state a claim pursuant to 12(b)(6) (Doc. No. 24) and in the

alternative filed a motion asking, pursuant to Rule 56(f) of the Federal Rules of Civil

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

Procedure, that "if the Defendants' Motion to Dismiss previously filed is converted into a motion for summary judgment" the court order a continuance so that discovery could be conducted (Doc. No. 25). Both the motion for summary judgment and the Rule 56(f) motion are fully briefed and the court rules as follows.

## I.      Background

Plaintiff Noel Daley is a horse trainer who in August 2006 attempted to enter four horses in races at Indiana Downs, located in Shelbyville, Indiana. The horses were owned by Plaintiff Adam Victor & Son Stables, LLC ("Victor Stables"). Defendants are Joe Gorajec, Executive Director of the Indiana Horse Racing Commission ("Commission"), and the members of the Commission.

According to the complaint,[2] Mr. Daley, although licensed as a horse trainer in New Jersey, Kentucky, Illinois, and Ohio, was not licensed in Indiana. Before applying for his license, Victor Stables paid to ship four horses from New Jersey to Indiana and paid "substantial" nominating and sustaining fees to keep the horses eligible for the race. When Daley went to apply for his Indiana horse trainer license, the Commission "summarily and in bad faith" refused to issue a permit,[3] and the horses had to be

---

[2]  As mentioned above, Daley treated the motion for summary judgment as one under 12(b)(6); therefore, he did not respond to Defendants' Statement of Material Facts Not in Dispute and provided no affidavits or other evidence of his own.

[3]  The Indiana Horse Racing Commission distinguishes between refusing to issue a license and denying a license. Refusing to issue a license is treated like a withdrawal, no record is made and an applicant may reapply. The Indiana Administrative Code explains:
The commission, the judges, or the executive director as the commission's

(continued...)

withdrawn from the races.  (Complaint ¶ 16.)  Plaintiffs do not explain what is meant by

bad faith denial, except to say that the denial was "summarily" given.  They do allege in

the complaint that Daley was given no reason for the Commission's refusal to issue a

license and that he was given no "timely" opportunity to appeal the decision of the

Commission.  (*Id.* at ¶ 18.)

Daley and Victor Stables allege three counts in the complaint for violations of 42

U.S.C. § 1983.  First, they allege that "by depriving a non-resident of a privilege or

---

[3](...continued)
designee may refuse to issue a license.  The decision to refuse a license is
treated as a withdrawal of the license application without prejudice and is not
reported to the ARCI.  If an applicant is refused, the applicant may reapply for a
license.  If an applicant contests a license refusal, the judges (or an
administrative law judge if the judges are unavailable) shall conduct a hearing
pursuant to the procedures provided for in 71 IAC 10.  Nonetheless, the hearing
on a license refusal is not considered to be a disciplinary action.  If the judges
affirm the decision to refuse a license application, the refusal shall be treated as
the denial of the application, consistent with these rules.

71 Ind. Admin. Code 5-1-12.  On the other hand, a formal denial is reported in writing along with
the reasons for the denial and is reported to organizations like the Association of Racing
Commissioners International.  The Indiana Administrative Code provides:

The commission, the judges, or the executive director as the commission's
designee may formally deny an application in accordance with these rules.  If an
applicant contests the basis of the denial of a license application not later than
fifteen (15) days after notice is served, the judges (or an administrative law judge
if the judges are unavailable) shall conduct a hearing pursuant to the procedures
provided for in 71 IAC 10.  Nonetheless, a hearing challenging the denial of a
license application is not considered to be a disciplinary action.  An application
which is denied shall:

(1) be reported in writing to the applicant stating the reasons for denial and the
date when a reapplication may be submitted; and

(2) be reported to the USTA and the ARCI, which shall then advise other racing
jurisdictions.

71 Ind. Admin. Code 5-1-13.  Both license refusal and denial provide for an appeal.

immunity protected by the United States Constitution" the Defendants violated the Privileges and Immunities Clause of the Article IV, § 2 of the Constitution.  (*Id.* at ¶ 21.) Second, they allege that they were treated "intentionally differently from others similarly situated and there is no rational basis for the different treatment."  Finally, they claim that the Commission deprived them of their "property without due process of law."  (*Id.* at ¶ 27.)

On December 5, 2006, Defendants filed a Motion for Summary Judgment and a brief which contained a Statement of Material Facts Not in Dispute pursuant to Local Rule 56.1.  According to facts recited there, on August 15, 2006, Defendant Gorajec was informed by Tim Schmitz, Presiding Judge of the Indiana Downs 2006 Summer/Fall Standardbred Meet, that Noel Daley was entering horses in races at Indiana Downs. Schmitz informed Gorajec that Daley had a history of violations of racing rules in other states.  Daley did not have a license to race in Indiana, and in anticipation of an application, Gorajec looked into Daley's history with the Association of Racing Commissioners International ("ARCI").

The ARCI report revealed that Daley had been suspended from racing in New Jersey for 270 days, fined $20,000 and forced to reimburse the New Jersey Racing Commission another $20,000 as part of a settlement agreement with the New Jersey Racing Commission related to the discovery of "drugs and drug instruments" confiscated from his barn and stable area.  Gorajec also contacted the New Jersey Racing Commission and obtained a copy of Daley's settlement agreement with the Commission.  In it, Daley admitted violating the racing rules of New Jersey by

possessing numerous controlled, dangerous substances.   According to Gorajec, he had never seen a violation of this magnitude in his career.

Given Daley's history, Gorajec made a determination that if Daley were to apply for a license, Gorajec would refuse to issue a license.  Gorajec instructed the Commission's offices at Indiana Downs to deny any application made by Daley.  Daley applied for his license on August 18, 2006, the same day that he had a horse scheduled to race.  The Commission refused to issue the license.

Gorajec filed an affidavit stating that residency played no role in his decision to deny Daley's license.  More than half of the licenses granted by the Commission in 2006 were to out-of-state residents.  Eighty-two licenses were granted to residents of Daley's home state, New Jersey.

Defendants also provided a copy of the notice of license refusal, quoting 71 Indiana Administrative Code 5-1-12, which states: "If an applicant contests a license refusal, the judges (or an administrative law judge if the judges are unavailable) shall conduct a hearing pursuant to the procedures provided for in 71 IAC 10."  71 Ind. Admin. Code 5-1-12.  71 Ind. Admin. Code Article 10, titled "Due Process and Disciplinary Action" details the procedures for all hearings in front of judges and the Commission.  According to Defendant, Daley did not contest the Commission's decision pursuant to these rules prior to filing his action in this court.

In response to Defendants' Motion for Summary Judgment, Plaintiffs filed both a response and a Rule 56(f) motion.  The response to the Motion for Summary Judgment

was styled as a response to a motion to dismiss pursuant to Rule 12(b)(6) and contained no list of Material Facts in Dispute pursuant to Local Rule 56.1 or a refutation of Defendants' facts or evidence.  The response consisted of two main parts: The first urged the court not to let Defendants "convert" a motion to dismiss into a motion for summary judgment.  The second recited case law in this Circuit related to notice pleading and claimed:

> [t]he only way for Defendants to win at this stage of the litigation is to convert their Motion to Dismiss into a motion for summary judgment so that they can argue factual issues and do not have to meet the stringent tests required to pass muster under a motion to dismiss standard.

(Pls.' Br. in Opposition to Defs.' Mot. to Dismiss 6.)

Plaintiffs also filed a motion pursuant to Rule 56(f) asking for the court to order a continuance on the motion for summary judgment so that Plaintiffs could pursue discovery.  Plaintiffs' Rule 56(f) motion included an affidavit to fulfill the requirements of the rule to demonstrate the reasons they could not present facts necessary to defeat summary judgment.[4]  Plaintiffs' counsel, Thomas R. Ruge, stated in the affidavit that discovery needed to be had:

---

[4]  Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

a. To determine the veracity of the statements and allegations contained in the Affidavit submitted by Defendant Joe Gorajec;

b. To determine the number of Indiana based owners and trainers who are granted licenses to operate at horse racing tracks in Indiana by the Indiana Horse Racing Commission who have previously violated rules of the Indiana Horse Racing Commission and what sanctions were imposed upon them as compared to out of state trainers and owners who have violated rules;

c. To determine the authenticity and veracity of the exhibits, besides the Affidavit of Mr. Gorajec, that were attached to Defendants' Motion to Dismiss;

d. To determine the notice that was provided to Adam Victor & Son Stable, LLC by the Defendants that its trainer was going to be denied a license resulting in a forfeiture of entry fees and expenses and the procedures available to Adam Victor & Son Stable, LLC prior to forfeiture of those sums to contest the actions of the Defendants.

(Ruge Aff. ¶ 3.)

## II.    Standard of Review

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses . . . ."  *Shivers v. Honeywell, Inc.*, 933 F. Supp. 705, 708 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

-7-

*Celotex Corp.* U.S. at 323; *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).

Plaintiffs argue that the Defendant's Motion for Summary Judgment should be treated as a motion to dismiss pursuant to Rule 12(b)(6).  Defendants "have attempted to convert their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) into a motion for summary judgment."  (Pl.'s Br. in Opposition to Defs.' Mot. to Dismiss 3.) Plaintiffs misunderstand Seventh Circuit case law dealing with conversion of a motion to dismiss to a motion for summary judgment.

When a defendant makes a 12(b)(6) motion and refers to matters outside the pleading, the court may convert the motion to a motion for summary judgment and analyze the evidence under the standard of Rule 56.  *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).  Rule 12(b) of the Federal Rules of Civil Procedure provides in relevant part:

> If on a [12(b)(6)] motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In other words, the court has two options when matters outside the pleadings are presented on a motion under 12(b)(6): exclude consideration of the matters outside the pleadings or convert the motion to one for summary judgment.

Of course, this is not the situation before the court currently because Defendants did not file a motion to dismiss pursuant to rule 12(b)(6); they filed a motion for summary judgment pursuant to Rule 56, which is their right to do at any time.  *See* Fed. R. Civ. P. 56(b).  Plaintiffs argue that the motion for summary judgment is "inappropriate" and "premature," but there is no such thing as a premature motion for summary judgment. Rule 56(b) of the Federal Rules of Civil Procedure provides that a defending party "may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Because a summary judgment motion may be filed at any time, the fact that no discovery has been undertaken does not necessarily defeat a motion for summary judgment.  *Waterloo Furniture Components, Ltd. v. Haworth,* Inc., 467 F.3d 641, 648 (7th Cir. 2006) (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986)); *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994) (same).

Plaintiffs' argument that the motion should be treated as one pursuant to 12(b)(6) seems to be based on a notion that it would be unfair to require them to respond to matters outside of the pleading when they have been unable to conduct discovery. (*See* Pls.' Br. in Opposition to Defs.' Mot. to Dismiss 5.)[5]  In order to survive a motion for

---

[5]  Plaintiffs may also have been confused by Defendants' first footnote which stated:

The Motion for Summary Judgment is, in effect, a Motion to Dismiss for failure to state a claim upon which relief may be granted and for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).  However, since matters outside the *Complaint* are presented and referenced herein, the Commissioners and Mr. Gorajec present their motion as one for summary judgment, consistent with Fed. R. Civ. P. 12(b), and in conformance with the requirements of L.R. 56.1 governing summary judgment.

(continued...)

summary judgment, a party must "set forth facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). How can Plaintiffs do this so early in the case?

Fortunately, Rule 56(f) provides a method for parties to defeat (or at least postpone) summary judgment in such a situation and Plaintiffs have availed themselves of it. Where for some reason the opposing party cannot set forth facts sufficient to survive a motion for summary judgment, Rule 56(f) gives the opposing party opportunity to submit an affidavit explaining the reason. The court may then "refuse application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R. Civ. P. 56(f).

But the Seventh Circuit has taught that a party must show why it is unable to respond and how further discovery will help it respond. As the court has quoted many times:

> Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits . . . and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

---

[5](...continued)

(Defs.' Br. in Support of Mot. for Summ. J. 1 n.1.)

-10-

*Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (quoting *Willmar Poultry*

*Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)); *Lamb's Patio*

*Theatre v. Universal Film Exchs.*, 582 F.2d 1068, 1071 (7th Cir. 1978) (same); *see also*

*Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 886 (7th Cir. 2005).

Plaintiffs must do more than request a "fishing expedition" to hopefully find

evidence that will allow them to make a case.  *G.N. Mortgage Corp.*, 396 F.3d at 885;

*Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *Korf*, 726 F.2d at 1230-31.  If they

fail to show how the discovery they seek will help demonstrate the existence of a

genuine issue of material fact, then denial of the Rule 56(f) motion is appropriate.  *See*

*Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1138 (7th Cir. 1986).  Further, if

Daley's complaint failed to state a claim, then the Rule 56(f) motion is moot because no

amount of discovery would allow him to demonstrate a genuine issue of material fact.

*Wolf v. Nw. Ind. Symphony Soc'y*, 250 F.3d 1136, 1145 (7th Cir. 2001).

## III.    Discussion

There are two motions pending before the court, Defendants' Motion for

Summary Judgment and Plaintiffs' 56(f) motion.  The court will analyze both motions

together because ruling on Plaintiffs' 56(f) motion requires the court to determine

whether Plaintiffs have shown that further discovery will allow them to demonstrate a

genuine issue of material fact.[6]  The court will first address two preliminary arguments

---

[6] Plaintiffs have adequately explained why they have been unable to discover any
evidence.  Namely, no discovery has yet been allowed.  However, Plaintiffs must still

(continued...)

from Defendants.  First, Defendants argue that Plaintiffs lack standing to seek injunctive relief and that only Defendant Gorajec may be sued in his individual capacity.  Next, Defendants argue that Victor Stables has no claim for damages because it has not alleged that its constitutional rights have been violated and therefore summary judgment must be entered against it.  After these preliminary matters, the court will address Plaintiffs' three claims to see first whether, without further discovery, Defendants have demonstrated the absence of a genuine issue of material facts and if they have whether Plaintiffs have demonstrated that discovery will allow them to demonstrate the existence of a genuine issue of material fact.  Defendants also assert that they are entitled to qualified immunity on the damages claims.  The court will address the merits of the constitutional claims first.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

### A.      Individual and Official Capacity Claims

In their opening brief, Defendants argue that they cannot be liable for damages under § 1983 in their official capacities.  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  Unsurprisingly, Plaintiffs admit this, and they correctly counter that their complaint clearly states that they do not seek damages from Defendants in their official capacity.  They only seek prospective injunctive relief, which is permissible.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S.

---

[6](...continued)
demonstrate how further discovery will allow them to demonstrate a genuine issue of material fact on each of their claims.

123 (1908)); *Holton v. Ind. Horse Racing Comm'n*, 398 F.3d 928, 929 (7th Cir. 2005).

Plaintiffs do seek damages from Defendants in their individual capacities.  Defendants

argue that Plaintiffs have not shown that they are entitled to receive injunctive relief and

that Plaintiffs have failed to state individual capacity claims against the Commissioners

(although they admit Plaintiffs have stated an individual capacity claim against Gorajec).

With respect to the injunctive relief claim, Defendants argue that Plaintiffs lack

standing to assert it.  Plaintiffs can have standing to seek damages yet lack standing to

seek injunctive relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

Defendants cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), for the

three elements that are "irreducible constitutional minimum of standing."  *Id.* at 560.[7]  In

particular, Defendants claim that Plaintiffs have failed to allege or support a claim of an

injury in fact.  The Court has described this element as: "an invasion of a legally

protected interest which is (a) concrete and particularized . . . and (b) 'actual or

imminent, not 'conjectural' or 'hypothetical'"  *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S.

149, 155 (1990)) (internal cites omitted).

Defendants' overly simplistic argument is that because Daley did not have a

license before the application was refused, "he has had nothing taken away."  (Defs.' Br.

17.)  Daley did not have a protected interest in the license; ergo, he has no "threatened

or actual injury."  (*Id.* at 18.)  This is like arguing that an African-American has no injury

---

[7] These three elements are (1) injury in fact; (2) causation; and (3) redressability.  *Lujan*, 504 U.S. at 560-61.

in fact when his application to register to vote is denied solely on the basis of race if it is his first time to register.

But standing is jurisdictional, and the court must convince itself that it properly has jurisdiction.  *Cf. Metallgesellschaft AG v. Sumitomo Corp.*, 325 F.3d 836, 842 (7th Cir. 2003) ("[A] district court may dismiss a case *sua sponte* for lack of Article III standing if it finds that the plaintiff has not suffered injury-in-fact.").  The court is convinced that Plaintiffs have not alleged an "injury in fact" for another reason.  Plaintiffs have not alleged that a future violation of their rights is "actual or imminent" as opposed to hypothetical.  Daley's application for a license was not denied; rather, it was refused.  He may reapply for a license at any time (or he might have challenged the refusal).  71 Ind. Admin Code 5-1-12.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

However, Plaintiffs have not alleged that they plan to apply for licenses again or that they have any plans or opportunities to race in Indiana again.  *Cf. Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").  Without this, Plaintiffs have no more chance of having their Constitutional rights violated in the future than any other person off the street.  Plaintiffs had the obligation "to allege facts demonstrating that [they are] a proper party to invoke judicial resolution of the dispute and the exercise of

the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).  Damages are sufficient to compensate them for any injuries suffered in the past.  *See Lyons*, 461 U.S. at 112-13.  For this reason they have no standing to assert a claim for injunctive relief against the Defendants.

But Plaintiffs assert they still have claims against the Commissioners in their individual capacities for damages.  This would be true if Plaintiffs alleged that each of the commissioners had done something in their individual capacities to deprive Daley of his constitutional rights.  "An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (quoting *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996)).  The only Defendant who can be said to have done anything in his individual capacity was Gorajec, who signed the refusal of the license.  Gorajec further admits that he is the one who made the decision to refuse Daley's application, which he has the authority to do as the Executive Director and the Commission's designee.  *See* 71 Ind. Admin. Code 5-1-12.  Plaintiffs make no allegation that the other Commissioners did anything to him.  Therefore summary judgment will be **GRANTED** for Defendants Sarah McNaught, Alan J. Armstrong, Jim Lauck, Doug Grimes, and Will Koch, leaving only claims against Joe Gorajec related to his individual actions in deciding to deny Plaintiff Daley's application.

### B.    Victor Stables's Claims

"Relief under § 1983 is available to a plaintiff who can demonstrate that a person acting under color of state law deprived the plaintiff of a right, privilege, or immunity secured either by the Constitution or by federal law."  *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  Defendants claim that Victor Stables has not alleged that its rights, privileges, or immunities secured by the Constitutional (as opposed to Daley's) have been violated.

The complaint alleges violations of the Privileges and Immunities Clause of Article IV, § 2, the Equal Protection Clause and the Due Process Clause.  It is well-established that as a corporation, Victor Stables has no rights under Article IV, §2.  *W. & S. Life Ins. Co. v. State Bd. of* Equalization, 451 U.S. 648, 656 (1981); *Blake v. McClung*, 172 U.S. 239, 259 (1898).  Although a corporation is a person for the purposes of the Equal Protection and Due Process Clauses, all of the allegations in the complaint involve actions taken against Daley.  How has the corporation been discriminated against and how have its due process rights been violated?  This is an argument that Plaintiffs do not address in any of their briefs.

The only vague clue Victor Stables gives that it has a § 1983 damages claim in its own right is in the affidavit submitted by Plaintiffs' attorney with the Rule 56(f) motion claiming that discovery is needed to determine what notice was provided to Victor Stables that Daley's application would be denied.  If Plaintiffs are claiming that Gorajec and the Commissioners violated the Constitution by not giving notice to Victor Stables before denying Daley's license application, that is an odd claim.  The Commission's

-16-

decision did not deprive Victor Stables of its property or liberty; therefore, no particular process is required by the Fourteenth Amendment.  *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)).

Victor Stables alleges in its complaint that it was deprived of the fees it paid to enter the horses in the races at Indiana Downs and the chance to win prize money.  But its not the same thing to say that Victor Stables was economically interested in the Commission's decision and that it was deprived of its property.  Victor Stables made these expenditures assuming Daley would be able to enter its horses in races; it might have glanced at Indiana Code § 4-31-6-6 and figured out that the Commission can deny applications.  The Due Process Clause protects people from having their life, liberty or property taken away without due process of law; it does not protect corporations that count their chickens before they hatch.  Given this deficiency in the complaint, there is no amount of discovery that would allow Victor Stables to survive summary judgment.  For this reason, the Rule 56(f) motion is **DENIED** as to Victor Stables and the Motion for Summary Judgment is **GRANTED** against it.

### C.    Equal Protection

Defendant argues that Daley has not even alleged an equal protection claim and that there is no genuine issue of material fact as to the claim.  Daley does not allege that he is a member of a protected class or that what is at stake is a fundamental right.  In fact, Daley does not allege that the law or the application of the law created any

classification.  He only alleges that he was treated "intentionally differently from other similarly situated and there is no rational basis for the different treatment."  (Am. Complaint ¶ 24.)  It could be argued that Daley's allegation that the license was refused "in bad faith" and "intentional[ly]" means that he is alleging that he was discriminated against as a "class of one."  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Defendants concede that the Supreme Court has taught that plaintiffs can bring equal protection claims as a "class of one" where they have "been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment."  *Id.* at 564.  However, the Seventh Circuit picking up on Justice Breyer's concurring opinion in *Olech* requires evidence of "illegitimate animus" toward the plaintiff.  The Seventh Circuit has written:

> we gloss "no rational basis" in the unusual setting of "class of one" equal protection cases to mean that to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position.

*Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000); *see also Torres v. City of Chicago*, 194 F. Supp. 2d 790, 794 (N.D. Ill.) ("[T]he plaintiff must show that the cause of the differential treatment of the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant.  Ill will must be the sole cause of the complained of action.").

Defendant argues that the reason the Commission refused to issue the license was not ill will or illegitimate animus toward Daley—he did not personally know Daley or

interact with him—the reason was Daley's previous violations of racing rules in New Jersey.  Daley did not allege in his complaint that Defendant was motivated by illegitimate animus, he did not present any evidence that Defendant was motivated by illegitimate animus, and finally, his rule 56(f) motion did not give any reason why discovery would allow Daley to demonstrate a genuine issue of material fact on this point.

In his briefs before the court, Daley provided no reason why the motion for summary judgment should not be granted.  Not one of the four items Daley claims he will pursue during discovery are remotely relevant for showing illegitimate animus on the part of Gorajec.  Daley's only other argument is that discovery has not yet begun; as explained above, that is not enough.  For this reason, the rule 56(f) motion will be **DENIED** on this claim and the motion for summary judgment on the equal protection claim will be **GRANTED**.

### D.    Due Process

In order to prevail on the § 1983 claim for procedural due process, a plaintiff must demonstrate that the claimed interest is a liberty or property interest under the Fourteenth Amendment.  *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989).  Daley claims that his property was deprived him without due process of law.  Exactly what that property was is a mystery not illuminated by Plaintiffs' briefs.  If it was the license to train horses applied for by Daley, the claim must fail.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must

have more than a unilateral expectation of it.  He must, instead, have a legitimate claim

of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577

(1972).

Property rights are created not by the constitution, but by an external source, like

state law, *id.*, and so a proper inquiry into whether Indiana law creates a property right

in a horse trainer's license by virtue of filling out an application best focuses on the

statute authorizing the Commission to grant or deny license applications.  "To the extent

a request appeals to discretion rather than to rules, there is no property." *Scott v. Vill. of*

*Kewaskum*, 786 F.2d 338, 340 (7th Cir. 1986).  Guidance for analyzing this statute to

determine whether a request for a license appeals to discretion rather than to rules can

be found in Seventh Circuit law.  In *Bayview-Lofberg's, Inc. v. City of Milwaukee*, 905

F.2d 142 (7th Cir. 1990), the Seventh Circuit affirmed a motion to dismiss for failure to

state a claim.  Plaintiffs alleged that their due process rights were violated when the

defendant denied their liquor licenses.  Defendant argued that plaintiffs did not have a

property interest in the license merely by the fact of applying for the license because the

statute regulating liquor licenses and the ordinance implementing it, gave discretion to

the Defendant to deny the application.

The statute stated that the city could give out licenses "as the issuing municipal

governing body deems proper." *Id.* at 144.  Previously, the Seventh Circuit had held

that this language was discretionary and thus did not create a property right.  *See Scott*,

786 F.2d 338.  Plaintiffs in *Bayview-Lofberg's* acknowledged this but stated that the

Milwaukee ordinance that implemented the statute took away any discretion of the

Milwaukee Common Council.  *Bayview-Lofberg's*, 905 F.2d at 144.  The ordinance created a right to a "due process hearing" if the committee might deny the license, and further provided a list of factors that evidence may be presented on at the hearing.  *Id.* at 145.  These included the appropriateness of the location, whether it would create undesirable neighborhood problems, and whether there is an overconcentration of liquor licenses in the area.  *Id.*  There was also a general welfare clause allowing the parties to present evidence on "[a]ny other factors which reasonably relate to the public health, safety and welfare."  *Id.* (quoting Milwaukee Code of Ordinances § 90-5-8(c-1)).  The Seventh Circuit found that the ordinance gave the committee much discretion with language like "appropriateness" "undesirable" and "overconcentration."  *Id.* at 145-46.  According to the court "the application of these factors calls upon the Committee to review and exercise discretion and judgment."  *Id.* at 146.

So it is with the statute in this case.  There can be little doubt that the Commission had the discretion to deny the application.[8]  The statute states:

> (a) The commission may refuse or deny a license application, revoke or suspend a license, or otherwise penalize a licensee, if:
>
> (1) the refusal, denial, revocation, suspension, or other penalty is in the public interest for the purpose of maintaining proper control over horse racing meetings or pari-mutuel wagering; and
>
> (2) any of the conditions listed in subsection (b) apply to the applicant or licensee.
>
> (b) The conditions referred to in subsection (a) are as follows:

---

[8]  Although, as explained below, that does not necessarily mean that the Gorajec did not violate Daley's rights when he exercised the Commission's discretion to deny Daley's application.

. . .

(2) The applicant or licensee has had a license of the legally constituted racing authority of a state, province, or country denied, suspended, or revoked for cause within the preceding five (5) years.

. . .

(10) The applicant or licensee has engaged in conduct that is against the best interest of horse racing.

Ind. Code § 4-31-6-6.  In other words, the Commission had the discretion to determine whether the denial was "in the public interest" and if they did the fact that subsection (b)(2) was satisfied gave them the discretion to deny the license (because the language says "may" deny).  In the alternative, the Commission might have found that the denial "in the public interest" and that the applicant had engaged in conduct "against the best interest of horse racing."

This is the language of discretion.  Therefore, Daley could not have had anything more than a unilateral expectation in receiving the license and had no property interest in it.  There is no amount of discovery that will save this claim.  For this reason, the Rule 56(f) motion is **DENIED** and the motion for summary judgment will be **GRANTED**.

### E.    Privileges and Immunities Clause

Article IV, section 2 of the United States Constitution states that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."   This clause prohibits a state from discriminating against a citizen of another state.  In essence, it "insure[s] to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."  *Toomer v. Witsell*, 334 U.S. 385,

395 (1948).  The purpose of the clause was to create one nation from a collection of

sovereign states.  *Id.*  It is normally used to strike down state laws that on their face

discriminate against citizens of other states.  *See, e.g.*, *Lunding v. N.Y. Tax Appeals

Tribunal*, 522 U.S. 287 (1998) (New York tax scheme which on its face discriminated

against non-residents by disallowing alimony deduction allowed to residents); *Supreme

Court of New Hampshire v. Piper*, 470 U.S. 274 (1985) (state supreme court rule limiting

bar admission to residents); *United Bldg. & Constr. Trades Council v. Camden*, 465

U.S. 208 (1984) (city ordinance requiring 40% of employees on city construction

projects be Camden residents).

The legislative scheme for giving out horse racing licenses in Indiana is facially

neutral; a non-resident is treated exactly the same as a resident in the law.  Daley, it

appears, must be challenging that the law discriminates against non-residents as it is

applied.  However, Plaintiffs did not explicitly argue this in their briefs and did not

present a single case in which a plaintiff prevailed in a Privileges and Immunities claim

as applied.  Yet Defendants seem to concede that an as applied challenge is allowable.

The court agrees.  The Supreme Court has taught that a Privileges and

Immunities Clause should not be dismissed simply because the law it attacks does not

discriminate on its face.  *Hillside Dairy, Inc. v. Lyons*, 539 U.S. 59, 67 (2003).

Presumably, the State of Indiana could not do through the discretion exercised by the

Horse Racing Commission that which it could not have done through explicit

legislation—namely, make it more difficult for someone to obtain a horse racing license

based on his residency.  An as applied claim is allowable under the Equal Protection

Clause.  *See Yick Wo v. Hopkins*, 118 U.S. 356 (1886).  And analogy to the Equal Protection Clause is logical because the Privileges and Immunities Clause "is a specialized type of equal protection provision which guarantees that all classifications which burden persons because they are not citizens of the state must reasonably relate to legitimate state or local purposes."  2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law—Substance & Procedure § 14.3.

So the court assumes, like the parties, that an as applied challenge under the Privileges and Immunities Clause is permissible.  Defendants argue that there is no genuine issue of material fact because there is no evidence that even the application of the law discriminates against non-residents.  In the complaint, Plaintiffs alleged only that Daley had been denied a license "in bad faith" and that the Defendants by depriving a non-resident of a privilege or immunity protected by the United States Constitution violated 42 U.S.C. § 1983.  Without further elucidating their legal theory or the factual basis of their claim, Plaintiffs, in their rule 56(f) motion, argue that they need discovery in order to demonstrate a genuine issue of material fact.

While Defendants claim in their brief in support for summary judgment that Plaintiffs have failed to state a claim upon which relief can be granted, they do not explain why.  Instead, Defendants spend six lines of their brief trying to show the absence of a genuine issue of material fact, arguing that Plaintiffs are unable to show that there was a classification in the law at all.  They claim that the contention that residency played a role in the Commission refusing to issue Daley a license application is "silly."  The evidence Defendants present is an affidavit from Gorajec declaring the

Commission issued more than sixty percent of its licenses to out of state residents in the year 2006.

In their response, Plaintiffs unwisely rely on their complaint which is insufficient to defeat a motion for summary judgment.  Plaintiffs' 56(f) motion, filed simultaneously, claims that they intend to look into Indiana-based applicants who were granted licenses despite having previously violating the rules of the Indiana Horse Racing Commission. The court could infer from this that Plaintiffs believe that the evidence will uncover that the Commission customarily grants applications from residents despite previous infractions of racing rules, but customarily denies applications from nonresidents with previous infractions.  Presumably, this would demonstrate that there was a classification in the law based on residency.  But, frustratingly, Daley no where states this.  The court is forced to build his case for him, despite his obligation to demonstrate that further discovery will help him show a genuine issue of material fact.  His three page brief in support of the 56(f) motion is little more than a exposition on the unfairness of granting summary judgment without letting him conduct discovery.

Yet given the evidence relied on by Defendants to demonstrate the lack of a genuine issue of material fact, Plaintiff's request to conduct discovery on this claim seems fair.  Defendants' only argument for summary judgment involves Plaintiffs' lack of evidence of a classification.  But when the classification derives from how a facially neutral law is applied to a license application, the evidence of the classification naturally relies on a statistical analysis of application denials and approvals.  *See Yick Wo*, 118 U.S. at 374; *but cf. McCleskey v. Kemp*, 481 U.S. 279, 293-94 (1987) ("[S]tatistical proof

normally must present a 'stark' pattern to be accepted as the sole proof of discriminatory intent under the Constitution. . . ."). Although Plaintiffs do not say so, the court assumes this information could only be obtained through discovery.

Further, Defendants' evidence—the percentage of out-of-state residents given licenses in 2006—is slightly off point if Plaintiffs' theory is that the commission is harsher on non-resident's with previous infractions than residents with previous infractions. And even if it were on point, it was presented in the form of an affidavit from a Defendant presenting only the information he wished to share. Plaintiff seemingly should have an opportunity to check the Defendant's arithmetic. For example, if 1500 out-of-state residents apply for licenses and 600 get them, while 400 out of 400 in state applications are granted, the contention that over half of the licenses granted were to out-of-state residents demonstrates little.

### F.    Qualified Immunity

Defendant claims that he should be entitled to qualified immunity in any case. Plaintiff counters that because qualified immunity requires a fact-based inquiry, *see Anderson v. Creighton*, 483 U.S. 635 (1987), it is inappropriate for the court to rule on this defense before discovery can be taken. But "claims of immunity often justify dismissing a complaint in advance of discovery." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring in part and concurring in the judgment). Plaintiff bears the burden to demonstrate that Defendant is not entitled to qualified immunity because the violation was of a clearly established right. *Forman v.*

*Richmond Police Dep't*, 104 F.3d 950, 958 (7th Cir. 1997).  If the discovery Plaintiff

seeks could not possibly help him demonstrate that Defendant should not receive the

benefit of qualified immunity, discovery would be useless.

The Supreme Court articulated the test for qualified immunity in *Harlow v.*

*Fitzgerald*, 457 U.S. 800 (1982).  In *Harlow*, the Court taught that an official can only be

liable for damages if he violated a law that was "clearly established."  *Id.* at 818.  "If the

law was clearly established the immunity defense ordinarily should fail, since a

reasonably competent public official should know the law governing his conduct."  *Id.* at

818-19.  The Court later explained that this requirement means that "the right the official

is alleged to have violated must have been 'clearly established' in a more particularized,

and hence more relevant, sense: the contours of the right must be sufficiently clear that

a reasonable official would understand that what he is doing violates that right."

*Anderson*, 483 U.S. at 639-40.  The Seventh Circuit has explained that this requires

"closely analogous cases to those decided before the defendants acted or failed to act .

. . ." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988) *overruled on other grounds*

*by Speigla v. Hull*, 317 F.3d 928, 941-42 (7th Cir. 2004); *see also Perry v.* Sheahan,

222 F.3d 309, 315 (7th Cir. 2000); *Connor v. Reinhard*, 847 F.2d 384, 388 (7th Cir.

1988).

Not only did the Plaintiffs fail to provide a closely analogous case, they provided

no case law at all related to the Privileges and Immunities claim.  The court could find

no case in this Circuit (or any other circuit) in which a Plaintiff prevailed on an as applied

-27-

challenge under Article IV, § 2.[9]   As the court explained above, analogizing to the Equal Protection Clause (which allows as applied claims), is logical; however, this is not the type of legal reasoning that an official with the Horse Racing Commission would be required to do.  *Cf. Hosty v. Carter*, 412 F.3d 731, 739 (7th Cir. 2005) (en banc) ("Public officials need not predict, at their financial peril, how constitutional uncertainties will be resolved.").  Therefore, it was not "clearly established" that Gorajec could not use Plaintiffs' residency as a factor in refusing to grant his license.  For this reason, Defendant is entitled to qualified immunity regardless of what discovery might have uncovered.  The court **DENIES** the Rule 56(f) motion and **GRANTS** the motion for summary judgment.

## IV.     Conclusion

Daley's equal protection and due process claims do not survive summary judgment despite the fact that no discovery has been conducted.  It is the Plaintiff's burden to explain why discovery is necessary for it to provide evidence to overcome summary judgment.  This Plaintiff has not done on these claims.   For this reason, summary judgment is **GRANTED** on these claims.  Defendant also moved for summary judgment on the privileges and immunities clause claim.  However, the only reason that Defendant gave for why summary judgment should be granted is that Indiana has

---

[9]  The Supreme Court has held that laws which "do not, on their face, create classifications based on any individual's residency or citizenship" are not necessarily immune from scrutiny under the Privileges and Immunities Clause.  *Hillside Dairy*, 539 U.S. at 67. However, *Hillside Dairy* was not an as applied challenge to the law in question and the language of the Court did not indicate one way or another whether an as applied challenge is permissible.  *See id.*

granted licenses to out of state residents.  Plaintiff seeks discovery to determine if Indiana based owners and trainers have been admitted with a more lenient standard. This is would be enough to allow discovery if it were not for the fact that Plaintiff would be unable to show that the violation was of a right clearly established.  For this reason, Defendant is entitled to qualified immunity.  The Rule 56(f) motion is **DENIED** on this claim and the motion for summary judgment is **GRANTED**.

ALL OF WHICH IS ENTERED this 7th day of August 2007.

John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William T. Lawrence

Robin L. Babbitt
BINGHAM MCHALE, LLP
rbabbitt@binghammchale.com

Kelly R. Eskew
BINGHAM MCHALE
keskew@binghammchale.com

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Thomas R. Ruge
LEWIS & KAPPES
truge@lewis-kappes.com